# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| United States of America | Case No.: **25-02053MJ** |
| --- | --- |
| v. | **CRIMINAL COMPLAINT** |
| Ivan Soqui | **(Electronically Submitted)** |

I, Matthew Dominguez, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

### COUNT 1

On or about October 24, 2025, in the District of Arizona, Defendant Ivan Soqui, by force, violence, and intimation, did take from the person and presence of an employee (A.R.) of Wells Fargo Bank, money belonging to and in the care, custody, control, management, and possession of Wells Fargo Bank located at 2507 S Avenue B, Yuma, Arizona 85364, the deposits of which were then federally insured by the Federal Deposit Insurance Corporation (FDIC).

All in violation of Title 18 United States Code, Section 2113(a). See Attachment A.

I further state that I am a Special Agent from the FBI and that this complaint is based on the following facts: **See Attached Statement of Probable Cause Incorporated By Reference Herein.**

Continued on the attached sheet and made a part hereof: ☒Yes ☐ No

AUTHORIZED BY: *s/Gayle L. Helart*, AUSA

GAYLE HELART
Digitally signed by GAYLE HELART
Date: 2025.10.26 16:47:46 -07'00'

MATTHEW DOMINGUEZ
Digitally signed by MATTHEW DOMINGUEZ
Date: 2025.10.26 16:42:50 -07'00'

Matthew Dominguez, Special Agent, FBI
Name of Complainant

Signature of Complainant

Telephonically Sworn to and subscribed

10/27/2025 at Yuma, Arizona

Date — City and State

HONORABLE JAMES F. METCALF
United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

<u>**Attachment A**</u>

<u>**Statute**</u>

**Count 1. Bank Robbery**. It is a violation under 18 U.S.C. § 2113(a) to take by force and violence, or by intimidation, from the person or presence of another, a thing of value belonging to, and in the care, custody, control, management, and possession of any bank, the deposits of which are insured by the Federal Deposit Insurance Corporation.

A violation of 18 U.S.C. § 2113(a) is punishable by up to 20 years, a maximum fine of $250,000, and up to 3 years supervised release.

**ATTACHMENT B**

**ELECTRONICALLY SUBMITTED STATEMENT OF PROBABLE CAUSE**

I, Matthew Dominguez, Special Agent with Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows, to wit:

**<u>INTRODUCTION</u>**

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been since 2021. I am a graduate of the FBI Training Academy in Quantico, Virginia, where I received training in narcotics investigations, transnational organized crime, violent gangs, white collar crime, cybercrime, interviewing, interrogation, evidence collection, intelligence analysis, and legal matters, among other topics. I am currently assigned to the Yuma Resident Agency of the Phoenix Division.

2. As part of my duties with the FBI, I investigate violations of federal law, including drug trafficking offenses enumerated in Title 21 of the United States Code and offenses related to international firearms trafficking, money laundering, and various violent offenses enumerated in Title 18 of the United States Code. I have attended specialized law enforcement training on numerous topics such as Mexican criminal enterprises, narcotics investigations, gang investigations, fugitive investigations, and financial investigations. During my tenure with the FBI, I have participated in several narcotics investigations, where I have become familiar with (a) the manner in which illegal drugs are imported and distributed; (b) the method of payment for such drugs; and (c) the efforts of persons involved in such activity to avoid detection by law enforcement. Additionally, I am part of specialized federal units responsible for identifying, locating, and ultimately apprehending violent subjects / fugitives.

3. Prior to becoming a Special Agent with the FBI, I served as an Intern, Operational Support Technician, and Staff Operations Specialist, in various FBI field offices where I gained additional experience investigating transnational organized crime, violent incident crimes, crimes against children, and money laundering. Through these experiences and investigations, I have received training on the internet and other technical matters related to the coordination and

1

communication of individuals to further criminal activity through means of encrypted applications and social media platforms. Additionally, I served on the social media exploitation team in various Divisions to identify and exploit social media platforms to assist in investigations.

4. The facts contained in this affidavit are based upon my investigation of this case including information provided to me by law enforcement officers and other persons in connection with this FBI investigation into a violation of 18 U.S.C. § 2113(a) which makes it a crime to take by force and violence, or intimidation, money from a bank whose deposits are federally insured by the Federal Deposit Insurance Corporation.

5. I have included facts more than sufficient to establish probable cause for the federal arrest of Ivan Soqui, DOB 1984 (full DOB known to me) who was identified as a person who took money by force and violence and intimidation from a teller who worked at a Wells Fargo bank branch in Yuma, Arizona. I am familiar that Wells Fargo, as a bank doing business in many states, is a bank whose deposits are federally insured.

## **DETAILS OF THE INVESTIGATION**

6. On October 24, 2025, FBI received a phone call from Yuma Police Department (YPD) about a bank robbery that occurred at the Well Fargo bank located at 2507 S Avenue B, Yuma, Arizona 85364. Around 12:18 PM, bank teller, A.R, (whose full identity is known to law enforcement) was performing his standard duties and assisting customers with bank related matters. A male, later positively identified as Ivan Soqui, was in A.R.'s line and was called up for assistance. Soqui approached A.R.'s counter, leaned over and stated "I have a gun on me, give me all the money you have" and nodded his head towards his waist area, suggesting that he possessed a gun in his waistband. A.R. did not see a weapon. A.R. hesitated and didn't respond. A.R. reported that Soqui repeated his demand for money in the Spanish language. A.R. understands the Spanish language, and the teller next to A.R. also understands Spanish and heard Soqui's repeated request for money made in Spanish. A.R., subsequently provided Soqui with varying denominations of United States currency. Soqui left the bank and was observed to get

1  on a lime green bicycle and ride away from the bank location. An audit of A.R.'s drawer showed
2  approximately $804 missing.
3      7.  Still shot images from Wells Fargo's bank security footage were analyzed, first through facial recognition software, and then by Yuma Police Department officers, all resulting in a positive identification of Soqui.  Law enforcement officers canvassed last known locations and spoke to a family member of Soqui who lived in Yuma to which the family member confirmed Soqui being the individual on the still shot photo from the robbery. Soqui was later apprehended by law enforcement in Somerton, Arizona without incident and transported to Yuma Police Department. At the time of Soqui's arrest, he had a total of $713 on his person, with $60 of this $713 being in his wallet.  Soqui had no firearm or other weapon on his person.

    8. FBI and YPD conducted a custodial interview of Soqui.  Law enforcement read Soqui his *Miranda* rights which he stated he understood and answered questions.  Soqui admitted to robbing the Wells Fargo bank by telling the teller he had a gun. Soqui stated he did not actually have a gun. Soqui admitted to taking the money and spending about $16 on food plus a $2 bill to a woman for a good luck tip.  Soqui stated he did not drop off or spend money anywhere else, and only spent the money on food and tip.  Soqui advised he knew what he was doing was not right however, he needed money. Additionally, Soqui stated he was going to go to Mexico after leaving Somerton, Arizona. Following his interview, Soqui was arrested by Yuma Police Department and is currently in state custody.

    9.  I have reviewed Soqui's contacts with law enforcement which include (all dates approximate):

    12/5/2021:  Burglary and Trespass, no disposition.
    3/23/2021:  Armed Robbery, no complaint filed. (See Paragraph 11 below.)
    3/23/2021:  Armed Robbery, no complaint filed. (See Paragraph 11 below.)
    7/11/2019:  Shoplifting, dismissal.
    5/19/2019:  Shoplifting, misdemeanor, unknown disposition.
    4/26/2019:  Shoplifting, misdemeanor. Guilty, fine.

| | | |
|---|---|---|
| 1 | 3/27/2019: | Shoplifting, misdemeanor.   Guilty, 3 years probation. |
| 2 | 5/30/18: | Possession marijuana.   Guilty, fine. |
| 3 | 2/28/18: | Disorderly Contact, Criminal Trespass, all acquitted and/or dismissed. |
| 4 | 2/22/2018: | Criminal Trespass, court dismissal. |
| 5 | 5/11/2014: | Attempted Murder, Agg Assault, no complaint filed. |
| 6 | 5/12/2011: | DUI, criminal trespass, no complaint filed. |
| 7 | 10/21/2019: | Burglary, no disposition. |
| 8 | 9/17/2009: | DUI, guilty, fine. |
| 9 | 2/15/2005: | Theft, no complaint filed. |
| 10 | 1/17/2005: | Burglary, criminal damage, guilty, 3 years probation. |
| 11 | 7/21/2004: | Burglary, criminal damage, no complaint filed. |
| 12 | 12/9/2003: | Criminal Damage, Endangerment, Speed, no complaint filed. |

10. I also noted that Soqui's criminal history returned an entry that for mental health reasons, Soqui may be a prohibited possessor of a firearm. I do not know of any specifics of Soqui's mental health at the present time. Soqui was responsive to questions during his interview with law enforcement.

11. Finally, I obtained the police reports for the two 2021 contacts for armed robbery that were not charged. I saw that Soqui was contacted on March 23, 2025 for two Yuma bank robberies that had occurred on March 10, 2021 and March 22, 2021. On March 10, 2021, Soqui entered the Chase Bank branch on 16th Street near the Yuma Police Department, approached a male teller, and said that he had a gun and to give him all the money in the drawer. A later audit showed the loss to be approximately $1,659. On March 22, 2021, Soqui entered a Chase Bank branch on Avenue B, approached a female teller and said 2-3 times to the effect, "put all the money in an envelope, I have a gun." A later audit showed the loss to be approximately $2,910. Soqui was located and contacted on March 23, 2021. He was given his *Miranda* warnings and interviewed about the two robberies. Among his many statements, Soqui stated he had robbed two banks in town. He said the teller from the first robbery was male and he picked him because

he did not want to talk to the girls. Soqui said that the teller in the second bank were only girls, but no guys, so he just went for it. He said he felt bad because he could feel that he could feel the girl telling her friends that she would need to find another job after being threatened by someone with a gun and he felt bad for her. He said he had spent the money from the first robbery he had done about two weeks before. He described the first bank as being next to the police department. At the end of the interview, he said he had told the truth and he guessed now he had to do the time. During the investigation, Soqui was determined to be homeless.

**CONCLUSION**

12. Based on the foregoing, there is probable cause to believe that Ivan Soqui violated 18 U.S.C. § 2113(a), which makes it a federal crime for any person to take by force and violence, or intimidation, funds from a bank whose deposits are federally insured, as further detailed in the Complaint.

Respectfully submitted,

MATTHEW DOMINGUEZ
Digitally signed by MATTHEW DOMINGUEZ
Date: 2025.10.26 16:44:03 -07'00'

Matthew Dominguez
Special Agent
Federal Bureau of Investigation

Telephonically subscribed and sworn before me this __27th__ of October, 2025.

Honorable James F. Metcalf
United States Magistrate Judge